UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

|  |  |  |
|---|---|---|
| **BAILEY KAY BROWN** | :: | |
| plaintiff | :: | Case No.   3:25-cv-242-RGJ |
| vs. | :: | |
| **BIG M ON DIXIE, LLC.,** | | |
| dba Big M Chevrolet | :: | |
| c/o R. Terry Bennett, statutory agent | | |
| 550 West Lincoln Trail Blvd | :: | |
| Radcliff, KY 40160 | | |
| defendant | :: | |
| _____/ | | |

**COMPLAINT TO ENFORCE CIVIL LIABILITY PURSUANT TO THE FEDERAL TRUTH-IN-LENDING ACT, VIOLATION OF KY CONSUMER PROTECTION ACT, UNLAWFUL REPOSSESSION, CONVERSION; SEEKING STATUTORY & PUNITIVE DAMAGES; ATTORNEY FEES; JURY TRIAL**

Plaintiff, Bailey Kay Brown brings this action against Defendant, Big M On Dixie, LLC. Dba Big M Chevrolet and alleges as follows:

**PARTIES**

1. Plaintiff, Bailey Kay Brown [hereinafter "Plaintiff"], is a resident of Hardin County, Ky and is an individual consumer who resides in the Commonwealth and a "buyer" as referenced herein, a "consumer" as defined in TILA, 15 U.S.C. §1602(i), a "person" as defined in both the Ky Motor Vehicle Sales Act, KRS 190.010(2) and in the Ky Consumer Protection Act, KRS §367.110(1), and a "retail buyer" as defined in the Ky Installment Sales Act, KRS §371.210(4).

2. Defendant, Big M On Dixie LLC dba as Big M Chevrolet **[hereinafter referred to as "Big M" or Defendant**] is a domestic corporation residing in Hardin County, Commonwealth of Kentucky and a creditor as defined in TILA, 15 U.S.C. §1602(g), a "motor vehicle dealer" as the term is defined in the Ky Motor Vehicle Sales Act, KRS §190.010(2), a "retail seller" as the term is defined in the Ky Installment Sales Act, KRS §371.210(5) engaged in the business of selling, offering to sell, soliciting, or advertising the same, of new or used vehicles, or possessing motor vehicle for purposes of resale, either on its own account, or on behalf of another, either as its primary business or incidental thereto, doing business in Radcliff, Ky. and a "person" as the term is defined in the Ky Consumer Protection Act (KCPA) at KRS §367.110 who, in the ordinary course of its business, directly financed the sale and purchase of certain motor vehicles pursuant to certain retail installment sales contracts.

## CLAIM ONE-FEDERAL TRUTH IN LENDING ACT
## <u>JURISDICTION</u>

3. This claim is made pursuant to the Federal Truth-in-Lending Act, 15 U.S.C. 1601, et seq. (hereinafter referred to as the "Act" or "TILA") and CFR 1026.1, et seq. (Reg. Z)

4. The jurisdiction of this Court is invoked pursuant to 15 U.S.C. **§1640(e)** and 28 U.S.C. **§1337**.

## GENERAL ALLEGATIONS

5. This is an action for statutory and actual damages which involves a single transaction consummated on April 30, 2024, and no other, brought pursuant to the federal Truth in Lending Act, 15 U.S.C. §1601, et seq. [hereinafter the "Act"] and 12 C.F.R.

1026.1, et seq. [hereinafter Reg. Z]. TILA and Reg. Z provide in pertinent part that their purpose is to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him/her and to avoid the uninformed use of credit. The defendant is the one and only creditor in Plaintiff's retail installment sales transaction [hereinafter the "RISC"], i.e, a credit sale. The plaintiff's contracts was consummated at the time the buyer signed the RISC presented to her by defendant and defendant delivered to her the purchased motor vehicle. Plaintiff is a consumer and, at all times referenced herein, the Defendant was a Limited Liability Company licensed to do business in the Commonwealth. Defendant is a motor vehicle dealer as defined under Ky law, which was engaged in trade or commerce with motor vehicles, and was licensed as a motor vehicle dealer under Ky law.

6. Plaintiff further alleges that when presented to her by defendant the RISC terms were entirely illusory because, when signed the RISC agreeing with the terms, defendant considered each and every provision in the RISC to be non-final and subject to change at defendant's whim, to wit: Defendant denies that it's the installment creditor, claiming that the "creditor" is some as-yet unknown third party to whom defendant may choose to assign the RISC. Defendant contends that some time after plaintiff signed the RISC and took delivery of the purchased motor vehicle, if defendant chooses to sell its obligation to a third party (as opposed to cancelling and changing the terms) it is at the time of assignment that "consummation" takes place. As a consequence of this procedure defendant itself is never bound to TILA's mandates and is never obligated under any RISC. If defendant chooses not to sell the RISC to a third party it will either unilaterally cancel the RISC and retake possession of the sold vehicle, or will change the terms of the RISC and require the buyer to sign a second, unbargained-for RISC or lose their purchased vehicle.

7. Defendant's acts and omissions are violations of TILA as TILA's purpose is to assure a meaningful disclosures of credit terms so that consumers will be able to compare more readily the various credit terms available to him or her and avoid the uninformed use of credit.

8. In practice the Defendant purportedly conditions the plaintiff's RISCs on it's ability to sell its contractual obligation to a third party, thus defining consummation as that point in time when a third party buys defendant's RISC, sometimes days or weeks after the buyer signs a RISC and accepts delivery of the purchased motor vehicle.  TILA mandates that consummation occurs at the time that buyers sign the RISC.

9.  The harm that is or may be visited upon the Plaintiff and others is what happened to the plaintiffs  That is, defendant's scheme is to deliver a new or used car to each retail buyer the same day the buyer sets foot on defendant's lot in order to take them out of the car-buying market.  During the transaction defendant's words and deeds are designed to convince buyers that they are purchasing and financing a motor vehicle at specific price and specific financial terms which, when defendant obtains the buyers' signatures on the retail installment contract, represents to the buyers that the financial terms are accepted, are final, and cannot be changed unilaterally.  But by Defendant obtaining Plaintiff's and others signatures its document the defendant is surreptitiously and illegally reserving to itself the unilateral and arbitrary ability to change the terms of the contract or to revoke the contract and reacquire the motor vehicle.  Later, when Plaintiff refuses to acquiesce to different and unbargained-for terms, or if defendant chooses to revoke the contract, defendant will retake possession of the motor vehicle and leave the buyer without transportation while retaining the buyer's down payment and/or trade-in.

## SPECIFIC FACTUAL ALLEGATIONS

10. In Mid April, 2024 Plaintiff began experiencing mechanical issues with her 2014 Audi Q5. As a mother with small children her job as a traveling nurse depended on her having reliable transportation to get from one client to the other. Therefore, Plaintiff decided that it was time to purchase a different vehicle.

11. Plaintiff's fiancé, had friends that worked at the Defendant and he suggested that Plain4tiff speak to it about buying a vehicle. Plaintiff, thereafter, visited Defendant's website to see what kinds of SUV's they had available.

12. On April 30, 2024 Plaintiff viewed a used GMC Terain on Defendant's website which interested her so she called the dealership and spoke with salesman Gavin Baxley [hereinafter "Baxley']. Baxley advised her to come by that day to take a look at the vehicle which she did.

13. Plaintiff drove to the Defendant in her 2014 Audi [hereinafter the "trade"] which she anticipated that she might trade in connection with any purchase she might make. When Plaintiff arrived at the Defendant she met with Baxley. She informed Baxley of her interest in the GMC Terrain she saw on Defendant's website. However, Baxley suggested that she look, instead, at a new 2024 Equinox. Baxley had the vehicle brought around where Plaintiff immediately took it for a test drive. After doing so, Plaintiff loved the vehicle because it appeared to be ideal for her job and sufficiently roomy for the transportation of her children.

14. Plaintiff expressed interest in purchasing the vehicle and immediately thereafter she was asked to fill out a credit application and her vehicle was appraised for trade-in value. After about one hour Plaintiff was informed that she was approved for

credit through GM Financial based on a sales price of $35,000 where she would receive approximately $6220 for her trade and an additional $2000 for being a "healthcare worker" leaving an amount financed of $26,900 before taxes **[attached exh. "A"].**

15. To those terms Defendant added approximately $3000 in adds ons, assessed Plaintiff a $400 doc. fee and with $1448 in sales taxes the amount financed would come out to be $ 31,812. On that amount financed Defendant disclosed an APR 17.030% which over 84 months resulted in monthly payments of $655.25 with a total of payments of $55,038.

16. The Plaintiff having agreed to all terms was then introduced to Jessica Dunn, Defendant's F&I person, with whom she sat down with and executed all the appropriate paperwork and documentation which consisted of both a Buyer's Order and Retail Installment Sales Contract providing TILA disclosures and other documents. After which Plaintiff was congratulated and drove the car home. At no time during this visit was Plaintiff told that the financing was pending approval or conditional. With everyone's reassurance, Plaintiff left the dealership fully confident that the sale was concluded and she was the owner of a brand new SUV. Plaintiff was so certain of this that, on May 9, 2024, she spent $795 to have her windows tinted.

17. On May 20, 2024 Plaintiff received a call from Baxley who informed her that GM Financial needed some additional documentation but assured her that everything was fine and there was nothing to be concerned about which Plaintiff provided on May 23, 2024.

18. However, On May 25, 2024, Plaintiff received a voicemail from Baxley which, because she was working at the time, was unable to return until the 27th at which time Baxley informed the Plaintiff that GM Financial had declined to finance her vehicle

demanded its return. This came as a shock and disappointment to Plaintiff which she questioned Baxley about after he informed her that she had been approved. Baxley responded that GM Financial could not get her approved on that particular vehicle, but if she would bring the vehicle back that day, he could get her approved on an identical 2024 Equinox, like the one she had.

19. On May 28, 2024 Plaintiff reluctantly returned the vehicle and handed the keys to Baxley. When she asked about the "other" Equinox, Baxley informed her that it was no longer available and suggested that she look at a 2014 Equinox and a 2012 Jeep, both of which had over 100,000 miles on them. Plaintiff refused to look at either one and asked for the return of her 2014 Audi which she had given in trade. Baxley went to his sales manager and returned shortly to inform her that her trade was no longer on the property, apparently, having already been sold.

## LEGAL ALLEGATIONS

20. Plaintiff seeks damages under federal Truth-in-Lending Act, 15 U.S.C. §1601, et seq. ("TILA") (hereinafter the "Act") and under Regulation Z, 12 cfr 1026.1, et seq., which are regulations promulgated pursuant to the Act.

21. Plaintiff hereby incorporates each and every allegation previously alleged in paragraphs 1-19 as if fully rewritten herein.

22. Plaintiff is "consumer" as the term is defined in the Act at 15 U.S.C. §1602(i).

23. Defendant is a "creditor", who, in the ordinary course of its business operations, regularly extends and/or arranges for the extension of credit to consumers such as the Plaintiff and as defined in the Act at 15 U.S.C. §1602(g).

24. On April 30, 2024, in connection with a credit sale, Defendant extended credit to the Plaintiff in the form of a "credit sale" as defined in the Act at 15 U.S.C. §1602(h) resulting in the execution between the parties of a retail installment sales contract supposedly disclosing various credit terms required under the Act **[see attached exhibit "B"].**

25. However, Defendant violated TILA and Regulation Z by using these illusory TILA disclosures in its RISC including the APR, the Finance Charge, the Amount Financed, the Total of Payments, the Total Sale Price and every other material credit term and the putative classes' RISCs because, at the time of consummation as defined by TILA, the disclosures were subject to subsequent change or cancellation at Defendant's sole and arbitrary discretion.

26. Defendant's acts and omissions are violations of TILA and Reg. Z as TILA's purpose is to assure a meaningful disclosures of all material terms so that consumers will be able to compare more readily the various credit terms available to them and avoid the uninformed use of credit. This is the case because it is impossible to meaningfully compare terms that are cancellable or changeable at Defendant's whim with credit terms proposed by its competitors.

## CLAIM TWO
### [VIOLATION OF CONSUMER PROTECTION ACT, KRS 367.110]

### JURISDICTION

27. This Court may exercise its supplemental jurisdiction of all state law claims plead herein by virtue of its constitutional authority under Article III and 28 U.S.C. 1367 in that Plaintiff's state law claims are so related to their federal claim that they form part of the same case or controversy. Venue is proper because the events that took place occurred entirely in this Division.

### LEGAL ALLEGATIONS

28. This claim relates solely to the April 30, 2024 transaction between the parties and no other.

29. Plaintiff hereby incorporates each and every allegation of paragraphs 1-19 as if fully rewritten herein.

30. On April 30, 2024 Defendant entered into retail installment sales contract for the purchase and financing of a 2024 Chevrolet Equinox [hereinafter the "vehicle"].

31. In connection with the transaction Defendant falsely informed Plaintiff that GM Financial had approved her for financing and, relying on this, Plaintiff agreed to take possession of the vehicle and to become obligated under the terms of attached exhibit "B".

32. Approximately one month later Defendant contacted the Plaintiff and informed her that it had been unable to obtain financing for vehicle and demanded its return.

33. In order persuade Plaintiff to return the vehicle Defendant lied and told her that it had an identical vehicle it could "get her approved for."

34. Relying on this, Plaintiff agreed to return the vehicle and surrendered its keys.

35. When Plaintiff asked about the "other" Equinox that Defendant had mentioned, she was informed that it was no longer available. Instead she was referred to older model vehicles with high mileage about which she was not interested.

36. Defendant violated the provisions of Kentucky's Consumer Protection Act through its use of numerous unfair, false, misleading statements and/or deceptive acts or practices in the conduct of this April 30, 2024 transaction.

37. As herein alleged, Defendant acted toward Plaintiff with oppression, fraud, and/or malice, warranting the imposition of punitive damages against it under the Act.

38. Plaintiff brings this action pursuant to KRS §367.220 which entitles her to an award of actual damages against Defendant.

39. Plaintiff brings this action Pursuant to KRS 411.184(2) which entitles her to an award of punitive damages against the Defendant.

## CLAIM THREE-UNLAWFUL REPOSSESSION BY DECEIT
### JURISDICTION

40. This Court may exercise its supplemental jurisdiction of all state law claims plead herein by virtue of its constitutional authority under Article III and 28 U.S.C. 1367 in that Plaintiff's state law claims are so related to their federal claim that they form part of the same case or controversy. Venue is proper because the events that took place occurred entirely in this Division.

### LEGAL ALLEGATIONS

41. This claim relates solely to the April 30, 2024 transaction between the parties and no other.

42. Plaintiff hereby incorporates each and every allegation of paragraphs 1-19 as if fully rewritten herein.

43. Plaintiff hereby incorporates each and every allegation previously alleged in paragraphs 1-19 as if fully rewritten herein.

44. Plaintiff is a resident of Elizabethtown, Ky.

45. Defendant, Big M is a corporation duly authorized to conduct business within the Commonwealth of Ky and, at all relevant times, was engaged in the business of selling and financing the sale of new and used motor vehicles within Hardin County.

46. On April 30, 2024 Defendant sold a 2024 Chevrolet Equinox to Plaintiff. Defendant then extended credit to Plaintiff through a retail installment sales contract [RISC] containing all relevant and required credit disclosure and payment terms.

47. On April 30, 2024 Defendant informed Plaintiff that GM Financial had approved her application for credit and that it was a "done deal" or similar words indicating that there were no conditions on receiving financing. Hearing that Plaintiff accepted all terms, entered into a retail installment sales contract and drove off with the vehicle. In reality Defendant was the only entity which had extended credit at that time.

48. After almost an entire month during which time Plaintiff was driving and enjoying her vehicle she received a call from Defendant's Salesman, Baxley, informing her that GM Financial had failed to approve her for credit and demanded that she surrender the vehicle.

49. Suspecting that Plaintiff might be reluctant to return the vehicle after being informed that her credit had been approved, in order to get her to return the vehicle, Defendant deceitfully lied and informed her that, if she would return her vehicle that same day, Defendant had an identical vehicle in stock for which it could get her approved. Hearing that, Plaintiff reluctantly drove to the Defendant and surrendered the vehicle.

50. After surrendering her vehicle to Defendant she immediately inquired about the "other" Equinox which Defendant said it had available for her. She was informed by the Defendant that the vehicle was no longer available and, instead, she was directed to look at older used vehicles with high mileage.

51. What Defendant, essentially, accomplished through its scheme was an involuntary repossession of Plaintiff's vehicle using deceit. Plaintiff was not and never in default of her obligation and, therefore, the demand for her to return the vehicle constituted unlawful taking no different than if a tow truck pulled up to her vehicle and towed it away.

52. The aforementioned acts were committed by Defendant with malice and ill-will and, therefore, entitle Plaintiff to punitive damages.

## CLAIM FOUR-CONVERSION
## JURISDICTION

53. This Court may exercise its supplemental jurisdiction of all state law claims plead herein by virtue of its constitutional authority under Article III and 28 U.S.C. 1367 in that Plaintiff's state law claims are so related to their federal claim that they form part of the same case or controversy. Venue is proper because the events that took place occurred entirely in this Division.

## LEGAL ALLEGATIONS

54. Plaintiff hereby incorporates each and every allegation previously alleged in paragraphs 1-19 as if fully rewritten herein.

55. This claim relates solely to the April 30, 2024 transaction between the parties and no other.

56. This claim for conversion contains two counts: one relating to the taking of Plaintiff 's 2024 Equinox and the other to her 2014 Audi Q5 which she traded in connection with her purchase of the Equinox.

### Count One: 2014 Audi Q5

57. In connection with an April 30, 2024 retail installment sales transaction between the parties, Plaintiff traded her 2014 Audi Q5 in order acquire a 2024 Chevrolet Equinox.

58. On May 28, 2024 Defendant cancelled the April 30, 2024 transaction and both demanded and took back the Equinox from the Plaintiff.

59. Plaintiff thereafter demanded the return of her Audi and was informed that it was not available and/or it was no longer at Defendant's location.

60. Defendant has wrongfully detained and removed Plaintiff's Audi without her consent thereby depriving Plaintiff from using it.

61. Defendant, having cancelled Plaintiff's transaction, was obliged to return the Audi and had no right to detain the property.

62. Plaintiff was prevented from use of her property only by defendant's actions in wrongfully detaining her property.

63. The conduct of defendant as described above constitutes conversion and civil theft.

64. Defendant acted to serve its own interests, knowing that such conduct would wrongfully deprive Plaintiff of her property.

65. At all times mentioned herein, Defendant acted maliciously, wantonly and with reckless disregard for property the rights of the Plaintiff.

### Count Two: 2024 Chevrolet Equinox

66. Plaintiff purchased and financed a 2024 Equinox from the Defendant on April 30, 2024 under the terms of a retail installment sales contract.

67. Plaintiff was informed by the Defendant that her credit had been approved by GM Financial.

68. The agreed upon terms of the obligation were that Plaintiff was to finance $31,812.65 for 84 consecutive monthly payments of $655.22.

69. Defendant was the actual creditor who extended the credit but apparently was unable to sell her obligation to a third party or refused to do so.

70. Defendant thereafter told the Plaintiff that it was unable to obtain financing for the vehicle when, in fact, it was the actual creditor who had actually extended credit to the Plaintiff.

71. Defendant, without any justification or legal authority, demanded that Plaintiff surrender the vehicle to it.

72. Plaintiff was the lawful and titled owner of the vehicle at the time but, based on the false information provided by the Defendant, believed Defendant and surrendered the vehicle to it.

73. Plaintiff had not defaulted on the terms of the retail installment sales contract.
60.  Defendant has wrongfully detained and removed Plaintiff's Audi without her consent thereby depriving Plaintiff from using it.

74. Plaintiff was prevented from use of her property only by defendant's actions in wrongfully detaining her property.

-14-

75. The conduct of defendant as described above constitutes conversion and civil theft.

76. Defendant acted to serve its own interests, knowing that such conduct would wrongfully deprive Plaintiff of her property.

77. At all times mentioned herein, Defendant acted maliciously, wantonly and with reckless disregard for property the rights of the Plaintiff.

## Prayer for Relief

Plaintiff prays for the following relief:

(a) in claim one for both statutory and actual damages;

(b) in claim two for actual and punitive damages;

(c) in claim three for compensatory and punitive damages;

(d) in claim four for compensatory and punitive damages;

(e) for reimbursement of attorney fees in connection with the prosecution of these claims;

(f) for reimbursement of all costs and expenses incurred in connection with the prosecution of this matter;

(g) for a trial by Jury; and,

(h) any and all other relief this Court may deem appropriate.

Respectfully submitted by:

/s/ *Gregory I. Thompson*
**Gregory I. Thompson, Esq.**
Thompson & Shreve PLLC
200 South Main Street
Elizabethtown, KY 42701
(270) 737-1125
git@thompsonlaw.org

and

*/s/Steven C. Shane*
Steven C. Shane (0041124 Ohio Bar)
Pro Hac Vice Trial Attorney for Plaintiff
P.O. Box 73067
Bellevue, Ky. 41073
(859) 431-7800
(859) 431-3100 facsimile
shanelaw@fuse.net