<u>EXH A</u>

## JUDICIAL ARBITRATION & MEDIATION SERVICES (JAMS)

### Case No. 5340001830

| | |
|---|---|
| **Bailey Kay Brown**<br>claimant | :: |
| | ::      **Subpoena For Documents &**<br>               **Records** |
| | :: |
| **Big M on Dixie, LLC.**<br>respondent | :: |

_____/

To: WESTLAKE SERVICES, LLC. dba Westlake Financial Services
CORPORATE CREATIONS NETWORK INC.
101 North Seventh St.
Louisville, Ky, 40202

**YOU ARE HEREBY ORDERED TO PRODUCE** to Attorney Steven C. Shane by email to shanelaw@fuse.net and/or ordinary mail the following on or before April 13, 2026:

**You are to respond to each specific request with documents that correspond to each individual document request.**

### <u>Definitions</u>

The following definitions and instructions shall apply to Claimant's requests for production:

1.  The term **"Document"** is used in the broadest sense contemplated by federal Rule of Civil Procedure 34, and includes, but is not limited to, the following items:  agreements; drafts; communications; correspondence; telegrams; cables; facsimiles; memoranda; records; books; financial statements; summaries of records or notes of personal conversations or interviews; diaries; calendars; forecasts; statistical statements; accountants work papers; graphs; charts; maps; diagrams; blue prints; tables; indexes; pictures; recordings; tapes; microfilm; charge clips; accounts; analytical records; minutes or records of meetings or conferences; reports and/or summaries of investigations; opinions or reports of consultants; appraisals; reports and/or summaries of negotiations; brochures; pamphlets; circulars; trade letters; press releases; contracts; stenographic, handwritten or any other notes; projections; working papers; federal and

## EXH A

state income tax returns; checks, front and back; check stubs or receipts; shipping documents; manifests; invoice vouchers; computer printouts and computer disks and tapes; and tape data sheets or data processing cards or disks or any other written, recorded, transcribed, punched, taped, filmed or graphic matters; however produced or reproduced.

2. The term **"Communication"** includes written or oral or "notice" required by statute and every manner of transmitting or receiving facts spoken by one person and from one person to another person, information, opinions, or thoughts, whether orally, by documents, writing, or copy thereof, or otherwise, including, but not limited to, words transmitted by telephone, electronic mail (email) radio, or any method of voice recording

3. The term **You** and **Yours** includes **Westlake Financial Services**, its employees, agents, independent contractors or anyone acting on or at the behalf and at its direction.

4. The term **"Claimant"** refers to **Bailey K. Brown** named in the caption above who instituted this action [hereinafter referred to as "Claimant"].

5. The term **"Respondent"** refers **Big M on Dixie, LLC.**, its subsidiaries, affiliates, sub and independent agents, employees, attorneys, and any person or entity acting at its direction or on its behalf.

6. The **"vehicle"** or **"subject vehicle"** refers to a 2022 Chevrolet Blazer hereinafter the **"subject vehicle"**].

7. The term **"transaction"** means and refers to any and all aspects of dealings between you and the Respondent on or before May 28, 2024.

8. The **period** or **time period** unless otherwise specified, refers to the period between May 1, 2024 through the present date.

9. The term **"contract"** or **"agreement"** is defined broadly herein where it includes any document executed by and between you and the Respondent concerning how to process loans in connection with the sale and financing of motor vehicles in effect on May 28, 2024.

10. **"True"** or **"true copy"** refers to whether the document attached and being referred to is an authentic or accurate copy of the original document.

## EXH A

11. **And or** shall be construed conjunctively or disjunctively as necessary to make the requests inclusive rather than exclusive. The use of the word including shall be construed to mean without limitation.

12. Reference to the singular in any of these requests shall also include a reference to the plural, and reference to the plural shall include a reference to the singular

13. **Related to** or relating to shall mean directly or indirectly supporting, evidencing, describing, mentioning, referring to, contradicting, comprising or concerning.

All other words or phrases not specifically defined herein shall have the ordinary and everyday English language meaning and usage.

### Requested Documents

1. Any and all documents you possess relating to the specific transaction exhibited by attached exhibit "A" where Claimant attempted to purchase the described Chevrolet Blazer motor vehicle therein and which transaction was attempted to be assigned to or purchased by you.

2. Any and all written contracts, agreements and documents of any kind and nature between you and the Respondent Big M on Dixie, LLC. effective on May 28, 2024 and thereafter involving and pertaining to the purchase and/or assignment of Retail Installment Contracts and Security Agreement governing and involving the arrangement of or the extension of credit identical or similar to exh. "A" in the above-referenced case initially executed between Claimant and Respondent, Big M on Dixie, LLC.

**This subpoena is being made in connection with the investigation of civil claims in the above-referenced case.**

EXH A

Date: March 25, 2026

Prepared and Submitted by:

*Steven C. Shane*
_____

Steven C. Shane
Trial Attorney for Claimant
P.O. Box 73067
Bellevue, KY 41073
(859) 431-7800

Issued by:

Date: March 26, 2026          *Jam E Snyder*
                    _____
                    **Arbitrator James E. Snyder**

**NOTE: Please refer to the following information regarding Rule 45 © and (D) of the federal Rules of Civil Procedure**

(C) Protection of persons subject to subpoenas.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena.
(2)(a) A person commanded to produce under divisions (A)(1)(b), (iii), (iv), (v), or (vi) of this rule need not appear in person at the place of production or inspection unless commanded to attend and give testimony at a deposition, hearing, or trial.
(b) Subject to division (D)(2) of this rule, a person commanded to produce under divisions (A)(1)(b), (iii), (iv), (v), or (vi) of this rule may, within fourteen days after service of the subpoena or before the time specified for compliance if such time is less than fourteen days after service, serve upon the party or attorney designated in the subpoena written objections to production. If objection is made, the party serving the subpoena shall not be entitled to production except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena, upon notice to the person commanded to produce, may move at any time for an order to compel the production. An order to compel production shall protect any person

## EXH A

who is not a party or an officer of a party from significant expense resulting from the production commanded.

(3) On timely motion, the court from which the subpoena was issued shall quash or modify the subpoena, or order appearance or production only under specified conditions, if the subpoena does any of the following:

(a) Fails to allow reasonable time to comply;

(b) Requires disclosure of privileged or otherwise protected matter and no exception or waiver applies;

(c) Requires disclosure of a fact known or opinion held by an expert not retained or specially employed by any party in anticipation of litigation or preparation for trial as described by Caver 26(B)(5), if the fact or opinion does not describe specific events or occurrences in dispute and results from study by that expert that was not made at the request of any party;

(d) Subjects a person to undue burden.

(4) Before filing a motion pursuant to division (C)(3)(d) of this rule, a person resisting discovery under this rule shall attempt to resolve any claim of undue burden through discussions with the issuing attorney. A motion filed pursuant to division (C)(3)(d) of this rule shall be supported by an affidavit of the subpoenaed person or a certificate of that person's attorney of the efforts made to resolve any claim of undue burden.

(5) If a motion is made under division (C)(3)© or (C)(3)(d) of this rule, the court shall quash or modify the subpoena unless the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated.

(D) Duties in responding to subpoena.

(1) A person responding to a subpoena to produce documents shall, at the person's option, produce them as they are kept in the usual course of business or organized and labeled to correspond with the categories in the subpoena. A person producing documents or electronically stored information pursuant to a subpoena for them shall permit their inspection and copying by all parties present at the time and place set in the subpoena for inspection and copying.

(2) If a request does not specify the form or forms for producing electronically stored information, a person responding to a subpoena may produce the information in a form or forms in which the information is ordinarily maintained if that form is reasonably useable, or in any form that is reasonably useable. Unless ordered by the court or agreed to by the person subpoenaed, a person responding to a subpoena need not produce the same electronically stored information in more than one form.

(3) A person need not provide discovery of electronically stored information when the production imposes undue burden or expense. On motion to compel discovery or for a protective order, the person from whom electronically stored information is sought must show that the information is not reasonably

## EXH A

accessible because of undue burden or expense. If a showing of undue burden or expense is made, the court may nonetheless order production of electronically stored information if the requesting party shows good cause. The court shall consider the factors in Civ. R. 26(B)(4) when determining if good cause exists. In ordering production of electronically stored information, the court may specify the format, extent, timing, allocation of expenses and other conditions for the discovery of the electronically stored information.

(4) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(5) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a receiving party must promptly return, sequester, or destroy the specified information and any copies within the party's possession, custody or control. A party may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim of privilege or of protection as trial preparation material. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

About | Printing Requirements | Reset | EXH A

On Demand (EOD™) Service.

KY-103-ARB 10/10/2015

# Retail Installment Contract and Security Agreement

| Seller Name and Address | Buyer(s) Name(s) and Address(es) | Summary |
|---|---|---|
| BIG M CHEVROLET<br>704 N Dixie Blvd<br>Radcliff, KY 40160 | BAILEY K BROWN<br>317 Sycamore St<br>Elizabethtown, KY 42701 | No. App# 92346878 - V# 1<br>Date 5/28/2024 |

☐ Business, commercial or agricultural purpose Contract.

## Truth-In-Lending Disclosure

| Annual Percentage Rate<br>The cost of your credit as a yearly rate. | Finance Charge<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid when you have made all scheduled payments. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of |
|---|---|---|---|---|
| 20.80 % | $ 20263.80 | $ 26201.40 | $ 46465.20 | $ 8200.00<br>$ 54665.20 |

Payment Schedule. Your payment schedule is:

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 72 | $ 645.38 | Monthly, Beginning 07/12/24 |
| | $ | |
| | $ | |

Security. You are giving us a security interest in the Property purchased.

Late Charge. If all or any portion of a payment is not paid within 10 days of its due date, you will be charged a late charge of 5% of the unpaid amount of the payment due or $15, whichever is greater.

Prepayment. If you pay off this Contract early, you ☐ may ☒ will not have to pay a Minimum Finance Charge.

Contract Provisions. You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

## Description of Property

| Year | Make | Model | Style | Vehicle Identification Number | Odometer Mileage |
|---|---|---|---|---|---|
| 2022 | Chevrolet | Blazer | SUV | 3GNKBHR48NS183114 | 25713 |

☐ New
☒ Used
☐ Demo

Other:

## Description of Trade-In

2014 Audi Q5 WA1LFAFP2EA006884

charge finance charges on the unpaid balance at _____ 20.80 % per year. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the *Truth-In-Lending Disclosure*. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

## Conditional Delivery

☐ Conditional Delivery. If checked, you agree that the following agreement regarding securing financing ("*Agreement*") applies: _____

_____. The Agreement is part of this Contract. The Agreement will no longer control after the assignment is accepted. If there are any conflicts between the terms of the Agreement and the Contract, the terms of this Contract will apply.

## Sales Agreement

Payment. You promise to pay us the principal amount of
$ 26201.40 _____ plus finance charges accruing on the unpaid balance at the rate of _____ 20.80 % per year from the date of this Contract until maturity. After maturity, or after you default and we demand payment, we will

Down Payment. You also agree to pay or apply to the Cash Price, on or before the date of this Contract, any cash, rebate and net trade-in value described in the *Itemization of Amount Financed*.

☐ You agree to make deferred down payments as set forth in your Payment Schedule.

☐ Minimum Finance Charge. You agree to pay a minimum finance charge of $ N/A _____ if you pay this Contract in full before we have earned that much in finance charges.

☐ Processing Fee. You agree to pay a processing fee of $ _____ that will be ☐ paid in cash.

☐ financed over the term of the Contract.

Retail Installment Contract-KY Not for use in transactions secured by a dwelling.
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2015

WLK-MVLFAZKY 12/2/2016

Page 1 of 6

The original document is owned by Westlake Services, LLC d.b.a. Westlake Financial Services and is held by it, as Custodian, on behalf of Wells Fargo Bank, National Association, as Agent and Secured Party. This copy was created on May 28, 2024 02:33:19 PM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

EXH A

## Itemization of Amount Financed

| | | | |
|---|---|---|---|
| a. | Cash Price of Vehicle, etc. (incl. sales tax of $ 1368.00 _____ ) | $ | 28702.00 |
| b. | Trade-in allowance | $ | 6200.00 |
| c. | Less: Amount owing, paid to (includes k): | $ | N/A |
| d. | Net trade-in (b-c; if negative, enter $0 here and enter the amount on line k) | $ | 6200.00 |
| e. | Cash payment | $ | 2000.00 |
| f. | Manufacturer's rebate | $ | N/A |
| g. | Deferred down payment | $ | N/A |
| h. | Other down payment (describe) _____ | $ | N/A |
| i. | **Down Payment** (d+e+f+g+h) | $ | 8200.00 |
| j. | **Unpaid balance of Cash Price** (a-i) | $ | 21702.00 |
| k. | Financed trade-in balance (see line d) | $ | |
| l. | Paid to public officials, including filing fees | $ | 100.40 |
| m. | Insurance premiums paid to insurance company(ies) | $ | N/A |
| n. | Service Contract, paid to: Power Protect Extended Service | $ | 3100.00 |
| o. | To: BIG M CHEVROLET for Doc Fee | $ | 399.00 |
| p. | To: Power protect | $ | 900.00 |
| q. | To: Other – | $ | 1200.00 |
| r. | To: _____ | $ | N/A |
| s. | To: _____ | $ | N/A |
| t. | To: _____ | $ | N/A |
| u. | To: _____ | $ | N/A |
| v. | To: _____ | $ | N/A |
| w. | To: _____ | $ | N/A |
| x. | To: _____ | $ | N/A |
| y. | **Total Other Charges/Amts Paid** (k thru x) | $ | 4499.40 |
| z. | **Prepaid Finance Charge** | $ | N/A |
| aa. | **Amount Financed** (j+y-z) | $ | 26201.40 |

We may retain or receive a portion of any amounts paid to others.

[This area intentionally left blank.]

## Insurance Disclosures

**Credit Insurance.** Credit life and credit disability (accident and health) are not required to obtain credit and are not a factor in the credit decision. We will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below only the coverages you have chosen to purchase.

**Credit Life**

☐ Single   ☐ Joint   ☒ None

Premium $ N/A _____ Term _____

Insured _____

**Credit Disability**

☐ Single   ☐ Joint   ☒ None

Premium $ N/A _____ Term _____

Insured _____

Your signature below means you want (only) the insurance coverage(s) quoted above. If "None" is checked, you have declined the coverage we offered.

N/A

By: _____ DOB

N/A

By: _____ DOB

N/A

By: _____ DOB

**Property Insurance.** You must insure the Property. You may freely choose the insurer and agent through which your insurance is provided. The collision coverage deductible may not exceed $ 1000.00 _____ If you get insurance from or through us you will pay $ N/A _____ for 0 months _____ of coverage.

This premium is calculated as follows:

| | | | | | |
|---|---|---|---|---|---|
| ☒ | $ | 1000.00 | Deductible Collision Cov. | $ | N/A |
| ☒ | $ | 1000.00 | Deductible Comprehensive | $ | INCL. |
| ☐ | | | Fire-Theft and Combined Additional Cov. | $ | N/A |
| ☐ | | _____ | | $ | N/A |

Liability insurance coverage for bodily injury and property damage caused to others is not included in this Contract unless checked and indicated.

☐ **Single-Interest Insurance.** You must purchase single-interest insurance as part of this sale transaction. You may purchase the coverage from a company of your choice, reasonably acceptable to us. If you buy the coverage from or through us, you will pay $ N/A _____ for _____ of coverage.

[This area intentionally left blank.]

Retail Installment Contract-KY Not for use in transactions secured by a dwelling.
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2015

WLX-MVLFAZKY 12/2/2016
Page 2 of 6

The original document is owned by Westlake Services, LLC d.b.a. Westlake Financial Services and is held by it, as Custodian, on behalf of Wells Fargo Bank, National Association, as Agent and Secured Party. This copy was created on May 28, 2024 02:33:19 PM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

## Additional Protections

You may buy any of the following voluntary protection plans. They are not required to obtain credit, are not a factor in the credit decision, and are not a factor in the terms of the credit or the related sale of the Vehicle. The voluntary protections will not be provided unless you sign and agree to pay the additional cost.

Your signature below means that you want the described item and that you have received and reviewed a copy of the contract(s) for the product(s). If no coverage or charge is given for an item, you have declined any such coverage we offered.

[X] **Service Contract**

Term _60 months or 60000 miles_

Price $ _3100.00_

Coverage _____

[X] **Gap Waiver or Gap Coverage**

Term _72 months_

Price $ _900.00_

Coverage _____

[ ] _____

Term _____

Price $ _____

Coverage _____

By: **BAILEY K BROWN**    _BAILEY BROWN_    5/28/2024    Date

By: _____    Date

By: _____    Date

## Additional Terms of the Sales Agreement

**Definitions.** "*Contract*" refers to this Retail Installment Contract and Security Agreement. The pronouns "*you*" and "*your*" refer to each Buyer signing this Contract, and any guarantors, jointly and individually. The pronouns "*we*", "*us*" and "*our*" refer to the Seller and any entity to which it may transfer this Contract. "*Vehicle*" means each motor vehicle described in the *Description of Property* section. "*Property*" means the Vehicle and all other property described in the *Description of Property* and *Additional Protections* sections.

**Purchase of Property.** You agree to purchase the Property from Seller, subject to the terms and conditions of this Contract. Seller will not make any repairs or additions to the Vehicle except as noted in the *Description of Property* section.

You have been given the opportunity to purchase the Property and described services for the Cash Price or the Total Sale Price. The "*Total Sale Price*" is the total price of the Property if you buy it over time.

**General Terms.** The Total Sale Price shown in the *Truth-In-Lending Disclosure* assumes that all payments will be made as scheduled. The actual amount you will pay will be more if you pay late and less if you pay early.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee that is more than the maximum amount permitted for this sale by state or federal law. If you pay a finance charge or fee that exceeds that maximum amount, we will first apply the excess amount to reduce the principal balance and, when the principal has been paid in full, refund any remaining amount to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

You agree that the Property will not be used as a dwelling.

**Prepayment.** You may prepay this Contract in full or in part at any time. See *Minimum Finance Charge* section. Any partial prepayment will not excuse any later scheduled payments. If we get a refund of any unearned insurance premiums that you paid, you agree that we may subtract the refund from the amount you owe, unless otherwise provided by law.

**Balloon Payment.** If any scheduled payment is more than twice as large as the average of your earlier scheduled payments, you may refinance that payment when due without penalty. The terms of the refinancing will be no less favorable to you than the original terms of this Contract. This provision does not apply if we adjusted your payment schedule to your seasonal or irregular income.

**Bad Check Handling Fee.** For purposes of Kentucky Revised Statutes § 514.040, you agree to pay a bad check handling fee of $50.00.

**Governing Law and Interpretation.** This Contract is governed by the law of Kentucky and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

**Name and Location.** Your name and address set forth in this Contract are your exact legal name and your principal residence. You will provide us with at least 30 days notice before you change your name or principal residence.

**Telephone Monitoring and Calling.** You agree that we may from time to time monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

**Default.** You will be in default on this Contract if any one of the following occurs (except as prohibited by law):

◆ You fail to perform any obligation that you have undertaken in this Contract.

◆ We, in good faith, believe that you cannot, or will not, pay or perform the obligations you have agreed to in this Contract.

If you default, you agree to pay our costs for collecting amounts owing, including court costs and fees for repossession, repair, storage and sale of the Property securing this Contract. You also agree to pay our reasonable attorneys' fees after default and referral to an attorney who is not our salaried employee.

If an event of default occurs as to any of you, we may exercise our remedies against any or all of you.

**Remedies.** If you are in default on this Contract, we have all of the remedies provided by law and this Contract. Those remedies include:

◆ We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.

◆ We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. You will repay us that amount immediately. That amount will earn finance charges from the date we pay it at the post-maturity rate described in the *Payment* section until paid in full.

◆ We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.

◆ We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises.

◆ We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward what you owe us.

◆ Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not give up our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

Retail Installment Contract-KY Not for use in transactions secured by a dwelling.
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2015

WLK-MVLFAZKY 12/2/2016

Page 3 of 6

The original document is owned by Westlake Services, LLC d.b.a. Westlake Financial Services and is held by it, as Custodian, on behalf of Wells Fargo Bank, National Association, as Agent and Secured Party. This copy was created on May 28, 2024 02:33:19 PM.

Copy of the Electronic Original® documen    naged by the eCore® On Demand (EOD™) Service.

EXH A

You agree that we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above. You may have a right to recover that property.

If the Property has an electronic tracking device, you agree that we may use the device to find the vehicle.

**Obligations Independent.** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:

◆ You must pay this Contract even if someone else has also signed it.

◆ We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.

◆ We may release any security and you will still be obligated to pay this Contract.

◆ If we give up any of our rights, it will not affect your duty to pay this Contract.

◆ If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**Warranty.** Warranty information is provided to you separately.

## Security Agreement

**Security.** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle and in all other Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract to the extent permitted by law.

**Duties Toward Property.** By giving us a security interest in the Property, you represent and agree to the following:

◆ You will defend our interests in the Property against claims made by anyone else. You will keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.

◆ You will keep the Property in your possession and in good condition and repair. You will use the Property for its intended and lawful purposes.

◆ You agree not to remove the Property from the U.S. without our prior written consent.

◆ You will not attempt to sell the Property, transfer any rights in the Property, or grant another lien on the Property without our prior written consent.

◆ You will pay all taxes and assessments on the Property as they become due.

◆ You will notify us with reasonable promptness of any loss or damage to the Property.

◆ You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**Agreement to Provide Insurance.** You agree to provide property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the *Insurance Disclosures* section, or as we will otherwise require. You will name us as loss payee on any such policy. Generally, the loss payee is the one to be paid the policy benefits in case of loss or damage to the Property. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You will keep the insurance in full force and effect until this Contract is paid in full.

If you fail to obtain or maintain this insurance, or name us as loss payee, we may obtain insurance to protect our interest in the Property. This insurance may be written by a company other than one you would choose. It may be written at a rate higher than a rate you could obtain if you purchased the property insurance required by this Contract. We will add the premium for this insurance to the amount you owe us. Any amount we pay will be due immediately. This amount will earn finance charges from the date paid at the post-maturity rate described in the *Payment* section until paid in full.

**Gap Waiver or Gap Coverage.** In the event of theft or damage to the Vehicle that results in a total loss, there may be a gap between the amount due under the terms of the Contract and the proceeds of your insurance settlement and deductibles. You are liable for this difference. You have the option of purchasing Gap Waiver or Gap Coverage to cover the gap liability, subject to any conditions and exclusions in the Gap Waiver or Gap Coverage agreements.

## Arbitration Provision

**PLEASE READ CAREFULLY!** By agreeing to this Arbitration Provision you are giving up your right to go to court for claims and disputes arising from this Contract:

◆ **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN YOU AND US DECIDED BY ARBITRATION, AND NOT BY A COURT OR BY JURY TRIAL.**

◆ **YOU GIVE UP ANY RIGHT THAT YOU MAY HAVE TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER IN ANY CLASS ACTION OR CLASS ARBITRATION AGAINST US IF A DISPUTE IS ARBITRATED.**

◆ **IN ARBITRATION, DISCOVERY AND RIGHTS TO APPEAL ARE GENERALLY MORE LIMITED THAN IN A JUDICIAL PROCEEDING, AND OTHER RIGHTS THAT YOU WOULD HAVE IN COURT MAY NOT BE AVAILABLE.**

You or we (including any assignee) may elect to resolve any Claim by neutral, binding arbitration and not by a court action. *"Claim"* means any claim, dispute or controversy between you and us or our employees, agents, successors, assigns or affiliates arising from or relating to: 1. the credit application; 2. the purchase of the Property; 3. the condition of the Property; 4. this Contract; 5. any insurance, maintenance, service or other contracts you purchased in connection with this Contract; or 6. any related transaction, occurrence or relationship. This includes any Claim based on common or constitutional law, contract, tort, statute, regulation or other ground. To the extent allowed by law, the validity, scope and interpretation of this Arbitration Provision are to be decided by neutral, binding arbitration.

If either party elects to resolve a Claim through arbitration, you and we agree that no trial by jury or other judicial proceeding will take place. Instead, the Claim will be arbitrated on an individual basis and not on a class or representative basis.

The party electing arbitration may choose either of the following arbitration organizations and its applicable rules, provided it is willing and able to handle the arbitration: American Arbitration Association, 1633 Broadway, Floor 10, New York, NY 10019 (www.adr.org) or JAMS, 1920 Main Street, Suite 300 Irvine, CA 92614 (www.jamsadr.com), or it may choose any other reputable arbitration organization and its rules to conduct the arbitration, subject to the other party's approval. The parties can get a copy of the organization's rules by contacting it or visiting its website. If the chosen arbitration organization's rules conflict with this Arbitration Provision, the terms of this Arbitration Provision will govern the Claim. However, to address a conflict with the selected arbitration organization's rules, the parties may agree to change the terms of this Arbitration Provision by written amendment signed by the parties. If the parties are not able to find or agree upon an arbitration organization that is willing and able to handle the arbitration, then the arbitrator will be selected pursuant to 9 U.S. Code Sections 5 and 6.

The arbitration hearing will be conducted in the federal district where you reside unless you and we otherwise agree. Or, if you and we agree, the arbitration hearing can be by telephone or other electronic communication. The arbitration filing fee, arbitrator's compensation and other arbitration costs will be paid in the amounts and by the parties according to the rules of the chosen arbitration organization. Some arbitration organizations' rules require us to pay most or all of these amounts. If the rules of the arbitration organization do not specify how fees must be allocated, we will pay the filing fee, arbitrator's compensation, and other arbitration costs up to $5,000, unless the law requires us to pay more. Each party is responsible for the fees of its own attorneys, witnesses, and any related costs, if any, that it incurs to prepare and present its Claim or response. In limited circumstances, the arbitrator may have the authority to award payment of certain arbitration costs or fees to a party, but only if the law and arbitration organization rules allow it.

An arbitrator must be a lawyer with at least ten (10) years of experience and familiar with consumer credit law or a retired state or federal court judge. The arbitration will be by a single arbitrator. In making an award, an arbitrator shall follow governing substantive law and any applicable statute of limitations. The arbitrator will decide any dispute regarding the arbitrability of a Claim. An arbitrator has the authority to order specific performance, compensatory damages, punitive damages, and any other relief allowed by applicable law. An arbitrator's authority to make awards is limited to awards to you or us alone. Claims brought by you against us, or by us against you, may not be joined or consolidated in arbitration with claims brought by or against someone other than you, unless agreed to in writing by all parties. No arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration.

Any arbitration award shall be in writing, shall include a written reasoned opinion, and will be final and binding subject only to any right to appeal under the Federal Arbitration Act ("FAA"), 9 U.S. Code Sections 1, et seq. Any court having jurisdiction can enforce a final arbitration award. You and we agree that this Arbitration Provision is governed by the FAA to the exclusion of any different or inconsistent state or local law.

Retail Installment Contract-KY Not for use in transactions secured by a dwelling.
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2015

WLK-MVLFAZKY 12/2/2016

Page 4 of 6

The original document is owned by Westlake Services, LLC d.b.a. Westlake Financial Services and is held by it, as Custodian, on behalf of Wells Fargo Bank, National Association, as Agent and Secured Party. This copy was created on May 28, 2024 02:33:19 PM.

Copy of the Electronic Original® docume... ...naged by the eCore® On Demand (EOD™) Service.

EXH A

You or we can do the following without giving up the right to require arbitration: seek remedies in small claims court for Claims within the small claims court's jurisdiction, or seek judicial provisional remedies. If a party does not exercise the right to elect arbitration in connection with any particular Claim, that party still can require arbitration in connection with any other Claim.

This Arbitration Provision survives any (i) termination, payoff, assignment or transfer of this Contract, (ii) any legal proceeding by you or us to collect a debt owed by the other, and (iii) any bankruptcy proceeding in which you or we are the debtor. With but one exception, if any part of this Arbitration Provision is deemed or found to be unenforceable for any reason, the remainder of this Arbitration Provision will remain in full force and effect. The one exception is that if a finding of partial unenforceability would allow arbitration to proceed on a class-wide basis, then this Arbitration Provision will be unenforceable in its entirety.

PROCESS TO REJECT THIS ARBITRATION PROVISION. You may reconsider and reject your approval of this Arbitration Provision by sending a written notice to the Assignee (identified in the Assignment section) or if there is no Assignee, then to Seller. The notice must be postmarked within 30 days of the date you signed this Contract. It simply needs to state your decision to reject the Arbitration Provision in this Contract and include your signature. It must also provide your name, Seller's name and the date of this Contract. Rejecting this Arbitration Provision will NOT affect the terms under which we will finance and sell the Property to you or any other terms of this Contract, except that the Arbitration Provision will not apply.

CAUTION: It is important that you read this Arbitration Provision thoroughly before you sign this Contract. By signing this Contract, you acknowledge that you read, understand and agree to this Arbitration Provision. If you do not understand this Arbitration Provision, do not sign this Contract; instead ask your lawyer. If you approve this Arbitration Provision, you have an additional 30 days after signing to reconsider and reject your approval, as described above. If you use that process to reject, this Arbitration Provision will not be a part of this Contract, but the rest of this Contract will still be binding and effective.

### Notices

Note. If the primary use of the Vehicle is non-consumer, this is not a consumer contract, and the following notice does not apply. NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

If you are buying a used vehicle: The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

Si compra un vehículo usado: La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.

[This area intentionally left blank.]

### Third Party Agreement

[This section applies ONLY to a person who will have an ownership interest in the Property but is NOT a Buyer obligated to pay this Contract ("Third Party Owner").]

In this section only, "you" means only the person signing this section.

By signing below you agree to give us a security interest in the Property described in the *Description of Property* section. You also agree to the terms of this Contract except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend or change this Contract, or release any party or Property without releasing you from this Contract. We may take these steps without notice or demand upon you.

**You acknowledge receipt of a completed copy of this Contract.**

N/A                                                    5/28/2024

By: _____        _____
Signature of Third Party Owner (NOT the Buyer)        Date

[This area intentionally left blank.]




Retail Installment Contract-KY Not for use in transactions secured by a dwelling.
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2015

WLK-MVLFAZKY 12/2/2015

Page 5 of 6

The original document is owned by Westlake Services, LLC d.b.a. Westlake Financial Services and is held by it, as Custodian, on behalf of Wells Fargo Bank, National Association, as Agent and Secured Party. This copy was created on May 28, 2024 02:33:19 PM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

### Arbitration Provision and Process to Remove

This Contract contains an Arbitration Provision that affects your rights. By signing this Contract, you agree that either of us may request and require the other to resolve disputes or claims through arbitration instead of a lawsuit. The Arbitration Provision includes a process you can follow in the next 30 days if you reconsider and want to reject the Arbitration Provision.

### Acknowledgment for Electronic Signatures

☒ Electronic Signature Acknowledgment. You agree that (i) you viewed and read this entire Contract before signing it, (ii) you signed this Contract with one or more electronic signatures, (iii) you intend to enter into this Contract and your electronic signature has the same effect as your written ink signature, (iv) you received a paper copy of this Contract after it was signed, and (v) the authoritative copy of this Contract shall reside in a document management system held by Seller in the ordinary course of business. You understand that Seller may transfer this Contract to another company in the electronic form or as a paper version of that electronic form which would then become the authoritative copy. Seller or that other company may enforce this Contract in the electronic form or as a paper version of that electronic form. You may enforce the paper version of the Contract copy that you received.

### Signature Notices

The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.

### Signatures

Entire Agreement. Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and us.

eSigned By: **_BAILEY BROWN_**     5/28/2024
By: BAILEY K BROWN     Date

By:     Date

By:     Date

This Contract requires that a copy of it be furnished to you at the time it is executed.

NOTICE TO BUYER. DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT OR IF IT CONTAINS BLANK SPACES. YOU ARE ENTITLED TO A COPY OF THE CONTRACT YOU SIGN.

BY SIGNING BELOW, YOU AGREE TO ALL THE TERMS OF THIS CONTRACT INCLUDING THE TERMS ON THE PAGES OF THIS CONTRACT THAT FOLLOW THE PAGE WITH YOUR SIGNATURE. BY SIGNING BELOW, YOU ALSO ACKNOWLEDGE THAT YOU RECEIVED A COPY OF THIS CONTRACT AND HAD A CHANCE TO READ AND REVIEW IT BEFORE YOU SIGNED IT.

Buyer

eSigned By: **_BAILEY BROWN_**     5/28/2024
By: BAILEY K BROWN     Date

By:     Date

By:     Date

Seller BIG M CHEVROLET

eSigned By: _Jessica Dunn_     5/28/2024
By:     Date

Assignment. This Contract and Security Agreement is assigned to Westlake Financial 4751 Wilshire Blvd. Suite 100 Los Angeles CA 90010 the Assignee, phone (800) 641-6700 . This assignment is made under the terms of a separate agreement made between the Seller and Assignee.
☐ This Assignment is made with recourse.

Seller BIG M CHEVROLET

eSigned By: _Jessica Dunn_     5/28/2024
By:     Date

[This area intentionally left blank.]

Retail Installment Contract-KY Not for use in transactions secured by a dwelling.
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2015

WLK-MVLFAZKY 12/2/2016
Page 6 of 6

The original document is owned by Westlake Services, LLC d.b.a. Westlake Financial Services and is held by it, as Custodian, on behalf of Wells Fargo Bank, National Association, as Agent and Secured Party. This copy was created on May 28, 2024 02:33:19 PM.



Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service

EXH A



## Westlake Financial®

Your contract has been assigned to Westlake Financial. During the next week, Westlake will contact you regarding your automobile purchase. **Please make sure that you are available for this telephone interview, which is required for the financing of your new vehicle.**

### Your first payment of $ | 645.35 | is due on | 07/12/2024

This payment and all your other payments must be paid to Westlake Financial. Westlake will send you a Welcome Package immediately after your contract is financed. You will also receive monthly billing statements from Westlake. If you do not receive a Welcome Package or billing statement before the first payment date above, you must mail the first payment directly to Westlake at the address below. Write your Social Security number on your check or money order, so the payment can be credited to your account.

Mail your payments to:

Westlake Financial
PO BOX 54807
Los Angeles, CA 90054-0807

Westlake Customer Service: (888) 739-9192

You also have other payment options:

**Pay Online:** Go to myaccount.westlakefinancial.com to register your account and make a payment today! Online payments can be made by Checking/ Savings Account or Visa, MasterCard, or Discover Debit and ATM. Please note, there MAY be a $5 fee associated with this service.

**Payment by Phone:** You can make a payment using our automated phone system by calling (888) 739-9192, 24/7. Phone payments can be made by Checking/ Savings Account or Visa, MasterCard, or Discover Debit and ATM. Please note, there MAY be a $5 fee associated with this service.

**MoneyGram©:** MoneyGram is also a wire transfer of your payment. The cost is $9.95. Call (800) 666-3947 for a MoneyGram location near you, or visit your local Wal-Mart. Give the MoneyGram agent the Westlake code of 2603. If you know your Westlake account number, give that number to the agent when you make the payment. Otherwise, give your Social Security number.

**CheckFree©:** CheckFree is an electronic payment transfer service. The cost is $1.50. Call (800) 676-6148 for a CheckFree location near you. You must know your Westlake account number to use this payment service.

**Pay Near Me©:** You can make a payment at any 7-Eleven or Family Dollar location. The cost is $3.99. Sign up for this service at paynearme.com/Westlake. You will need your Westlake account number, and your 5-digit zip code. You can choose to receive either an email or text message that contains a link to a barcoded Pay Slip that can be printed, or sent to your phone. Pay Near Me Excluded States: New Mexico, Hawaii, and Oklahoma.

| Customer Name: **BAILEY K BROWN** | | Cosigner: |
|---|---|---|
| Physical Address: **317 Sycamore St** | | |
| City: **Elizabethtown** | State: **KY** | ZIP: **42701** |
| Day Phone: **(270) 735-5770** | Eve Phone: **(270) 735-5770** | |

Selling Dealership Name: **BIG M CHEVROLET**

Customer First Payment Notice ENGLISH – 10-2017

The original document is owned by Westlake Services, LLC d.b.a. Westlake Financial Services and is held by it, as Custodian, on behalf of Wells Fargo Bank, National Association, as Agent and Secured Party. This copy was created on May 28, 2024 02:33:19 PM.